## THE PANAMA CITY.

### BARLOW v. WATERMAN STEAMSHIP CORPORATION.

No. A–15322.

District Court, E. D. New York.
June 7, 1938.

Jacob Rassner, of New York City, for libelant.

Barber, Matters, Gay & Vander Clute, of New York City (Russell C. Gay, of New York City, of counsel), for claimant-respondent.

GALSTON, District Judge.

Pan-Atlantic Steamship Corporation by stipulation was substituted as a party respondent instead of the Waterman Steamship Corporation.

The libellant was employed as a seaman on board the steamship "Panama City". He alleges that on September 27th, 1937, while engaged in the performance of his duties, he was caused to be thrown by a fellow seaman down to the well-deck of the vessel and suffered serious head and other bodily injuries.

The plaintiff testified that on Sunday, September 26th, at about noon he left the ship merely for the purpose of getting a Sunday paper and that he returned directly to the vessel. On September 27th his watches were from midnight to 4 A. M. and from noon to 4 P. M. At about 5 P. M. on September 27th he had his meal on board and then retired to his quarters to sleep. At about 9 P. M. he went to the mess hall on the saloon deck. He again proceeded to his quarters but on hearing a radio playing in the room of the third assistant engineer, he asked his permission to remain on deck to listen to the broadcast. Receiving permission to do so he sat on a box outside this room and listened. At about 9:30 P. M. he heard footsteps coming from behind and on turning he observed the seaman, whom he called the "Greek", who thereupon accidentally collided with him and caused him to fall to the well-deck.

The plaintiff's story, except that Strub, the third assistant engineer, recalled Barlow's request to remain outside to listen to the radio broadcast, remains in all respects uncorroborated.

All of the respondent's testimony was taken by deposition. Unfortunately there are contradictions involved and it is not altogether clear from what these men say just when the accident took place. As has been stated, the libellant himself placed the time at about 9:30 P. M. on September 27th, 1937.

Ellis, the second mate, described the "Panama City" as an old Shipping Board vessel, built in 1919 or 1920. The officers' quarters were on the forward end of the saloon deck, which is raised about 8 feet above the well-deck. Aft of their quarters is the No. 3 cargo-hold and further astern are the engineers' quarters.

The vessel tied up at Greenpoint on the morning of September 26th. Barlow then went ashore and during the afternoon returned with a package. Ellis thought the package contained beer, though he didn't see the contents; but early that evening or late afternoon Barlow, so Ellis said, was

drunk. He staggered around the deck and bumped up against the bulkhead and the railing, and puttered around, engaging in conversation or trying to make conversation with various persons on the ship. He was supposed to be on watch from 12 M. to 4 P. M., and then again at 12 midnight. Ellis was not sure whether he went on watch at 12 M. Ellis said that Karafile, another seaman (referred to as the "Greek" by the libellant), who was to take the watch from 4 P. M. to 8 P. M., reported to him that he was unable to find his relief, Goodrum, and that Barlow had stated that he had promised Goodrum to take the watch from 8 to 12. Karafile's story was that he did not think Barlow was in fit condition to take over the watch. Searching for Barlow, Ellis found him forward of the crew's mess room, under the influence of liquor, staggering around the deck and mumbling that he had promised to take the 8 to 12 watch. Ellis told him he was in no fit condition to stand his own watch at 12 o'clock, to say nothing of the watch from 8 to 12. Though Barlow contended that he was all right, he was ordered back to the forecastle. Ellis took him by the arm and helped him down the well-deck ladder and then aft. Ellis then ordered Karafile to stand the 8 to 12 watch until Goodrum should come aboard. About 10 o'clock Russell, the junior engineer, reported to him that Barlow was injured and was lying on the well-deck. They picked him up, Ellis finding that his breath smelled of liquor.

Ellis, after consulting the ship's records, corrected his testimony so far as it related to the day of the accident. The accident occurred on the night of Monday, September 27th. The log shows the vessel anchored off Newtown Creek at 6 A. M., September 26th, 1937. On September 26th, under the corrected testimony, it appeared that the third mate and a seaman had been on night duty.

Strub, the third assistant engineer, said the accident happened on Monday, September 27th, at about 10 o'clock at night. Shortly before the accident, while he was reading in bed, Barlow asked him to be permitted to remain on deck to listen to his radio. Strub assented. About an hour later Strub heard a noise as though someone had fallen and on investigating found Barlow at the bottom of the ladder. Strub's room was but a step away from the top of the ladder.

Russell, the junior engineer, testified that in assisting Barlow to the mate's quarters, he too smelled whiskey from Barlow's breath. Previous to the accident, at 6 P. M., Russell had met Barlow returning to the ship and observed him staggering. Barlow stopped him, pulled out a half pint of whiskey and invited him to take a drink.

Karafile says that Barlow came aboard the ship on Monday evening at about 8:30 or 9 o'clock. It is to be noted that as to this time he disagrees with Russell, who said that he had met Barlow on the dock at about 6 P. M. Karafile reported Barlow's condition of intoxication to the second mate, and corroborates Ellis as to his orders to Barlow. Karafile remained on duty until 12 o'clock and at about 9:30 or 10 o'clock, saw Barlow miss the ladder and fall.

Barlow in rebuttal denied that he was intoxicated on September 26th or on September 27th. He also denied that he had taken any alcoholic beverages.

■ I am forced, however, by the record to conclude that the accident arose out of his state of intoxication. Confirmation of the testimony of respondent's witnesses is found in the record of the United States Marine Hospital, from which it appears that Barlow stated that he had been sitting on the boat deck and thought he had fallen asleep. There is also a statement signed by Barlow that he was under the influence of intoxicating liquors at the time of his accident and that neither the vessel nor any of its officers or crew was in any way to blame. Just under what circumstances this latter statement was obtained does not appear, but even in the absence of the hospital record and his own signed admission, enough is shown to compel the finding that the accident arose because of the intoxication of the libellant. Certainly he completely fails to offer corroboration of his own story and fails to sustain the burden of proof which rests upon him.

■ Nor is the libellant entitled to maintenance and cure since the injury was caused by his own wilfull wrongdoing. The Berwindglen, Rawding v. Hooten, 1 Cir., 88 F.2d 125.

The libel must be dismissed. If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.